## STATE *v.* MOORMAN.

1. Before any confession of a prisoner is received, it should be shown to the trial judge that the confession was voluntary and free from any inducement addressed to either the hopes or the fears of the prisoner.

2. The charge in this case was not on the facts in violation of the constitutional inhibition.

3. There was no error in failing to instruct the jury that the prisoner was entitled to the benefit of all reasonable doubts, the judge not having been requested so to charge.

Before ALDRICH, J., Union, March, 1887.

This was an indictment against Ike Moorman for arson. The evidence consisted wholly of confessions made by the prisoner on the morning after his arrest. The witnesses for the prosecution proved these confessions after satisfying the presiding judge that they had not been extorted by any threats or promises on the part of these witnesses. The presiding judge was so satisfied from the statements made by the witnesses, without permitting any cross-examination upon this preliminary inquiry. Counsel for defendant said: "I would like to know the whole circumstances under which this was. I would like for your honor to examine this witness.

"The Court: You can ask him that on the cross-examination.

"Mr. Townsend: But the testimony will then have gone to the jury.

"The Court: It has got a right to go to the jury now. The witness has said that what communication he received he received it freely, voluntarily, without fear, without inducement, without threat. Now, if that is not laying the foundation completely, I don't know.

"Mr. Townsend: All of that is an opinion of this witness. Now, what I want, your honor, is, that the circumstances under which he gave it may be testified to in open court, in order that the court may judge whether it was free, or voluntary, or without fear.

"The Court: You can bring that out on the cross-examination, and if the testimony is incompetent, I will have it struck out.

"Mr. Townsend excepts."

It appeared on the cross-examination of these witnesses that the prisoner and Jim Ferris were arrested about 9 or 10 o'clock at night, and were carried about fourteen miles, reaching Crosby's store about midnight; but on their way a party of unknown men took the two prisoners away and apart from this arresting party. The defendant and Ferris (as to whom the grand jury found no bill) testified that this unknown party separated the two prisoners, and persuaded each that the other had been killed, hung both of them up to a tree, and by threats extorted a confession from Moorman, and a statement from Ferris that Moorman was not with him at the time of the fire. And Moorman testified that the fears aroused the night before had not subsided when he repeated these confessions next morning to the witnesses in the case. After this testimony no request was made to rule out the confessions proved by the State.

The judge's charge was as follows:

Just after the war these fires of barns and gin houses, mills, and other buildings attached to the plantations, were so frequent that the legislature found it necessary to make the penalty severe, and so the burning of one of these houses was made the same as if it was a dwelling house. But since then the law has been moderated, and the jury, if they find the prisoner guilty of burning one of these gins or mills or barns, if they recommend him

to mercy, the court may sentence him to imprisonment not less than ten years. So that this is simply a question of fact for you to decide. I have no instructions to give you. There is no law in the case. The ·question is simply one of fact, who burned this gin?

Now, you heard something said in the examination of the exceptions taken to the ruling of the court as to confessions. There seems to be a misapprehension on the mind of the learned counsel. All that is necessary is that the confession should be voluntary. If a man is in shackles, or is bound on his arms, or even is in his cell, if he calls for an officer of the court, or a friend, or any other person, and makes a voluntary confession, the courts have held again and again that that is all that is necessary. There must be no inducement held out to him, either of hope or reward, or of fear of punishment, simply that he voluntarily confesses.

Now, in this case you have to deal with confessions entirely. This man has made confessions to one, two, and three persons. Was his confession made to the magistrate, the trial justice, when he was walking along by his side with his arm over his horse's neck—was that a voluntary confession? Was any inducement held out to him then? Was his confession to Mr. Pennington in the store when he was not even bound, was that a voluntary confession? He asked him to come and see him. Is that voluntary, or was there any fear under which he was laboring that induced him to make that confession? Those are matters for your consideration, and yours alone, and really that is all the instruction that I have to give you in this case, for as I said it is a question of fact, and the law makes you sole judges of those questions. The defence is, first, that it was an accidental fire, his confessions say. Those are his confessions. He says he did light a splinter and throw it down there, and escaped, or ran away. That is the burden of his confession. He does not say that he made any attempt to put out the fire, or that he gave any alarm. He simply got scared and ran off.

The defence is that he was not there at all, an *alibi*; that he was not at the gin-house that night—he never went near it—and if that be true, why, of course, he could not have been the incen-

diary. But those are matters which you are to determine, and upon the decision of which I cannot assist you, for the law does not permit me.

If you find a verdict of "guilty," he will be executed. If you find a verdict of "guilty" and recommend him to mercy, he will be imprisoned. If you find a verdict of "not guilty," he will be discharged. Take the record and consider the case.

The jury found a verdict of guilty, and the defendant was sentenced. He appealed on the following exceptions:

1. Because his honor, the presiding judge, erred in allowing the confessions of Ike Moorman to go to the jury, when it clearly appeared from the testimony that they were made under duress and threats of bodily harm, and were otherwise involuntary.

2. For that his honor erred in basing his opinion and ruling as to the admissibility of said confessions on the statement of the witness, in terms, that the said confessions were made freely and voluntarily, and without inducement or threats; whereas, his honor should have required testimony in regard to all the circumstances under which said confessions were made, upon which to base his opinion and ruling as to the admissibility of said confessions.

3. Because his honor erred in not allowing all the circumstances under which said confessions were made to be proved before making his ruling in regard to the admissibility of said confessions.

4. Because his honor erred in refusing to strike out said confessions after all the circumstances under which they were made had been proved.

5. Because his honor erred in charging the jury, in substance, that a confession was made to the committing trial justice while walking along by his side with his arm over his horse's neck, when it clearly appears that no confession was made under such circumstances, and that such circumstances did not exist; and that this part of his charge was otherwise misleading.

6. Because his honor erred in charging the jury in regard to the confession proved by the witness, B. F. Pennington: 1st. In that his honor charged the jury that the defendant sent for Pennington; and, 2d. In that his honor charged the jury that the de-

fendant made a confession to Pennington while not even bound—
as it clearly appears from the testimony that at the time referred
to the defendant was tied with a rope, and there is no evidence
whatever that the defendant sent for Pennington.

7. Because his honor violated art. 4, sec. 26, of the State
Constitution, by intimating his own opinion to the jury in the
use of the following words, to wit: * * *

9. Because his honor erred in omitting to charge the jury that
if they entertained a reasonable doubt as to the guilt of the de-
fendant, they must resolve that doubt in favor of the defendant.

*Messrs. I. G. McKissick* and *D. A. Townsend,* for appellant.

*Mr. Duncan, solicitor,* contra.

June 23, 1887. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The appellant, Ike Moorman,
was indicted for arson. He was convicted at the March term of
the court for Union county, 1887, and was sentenced by his
honor, Judge Aldrich, to ten years at hard labor in the peniten-
tiary. From this judgment he has appealed to this court, alleg-
ing error to the rulings and charge of his honor. His appeal is
grounded upon nine exceptions. The main points involved, how-
ever, are but two, to wit: 1st. That certain confessions made
by the defendant should not have been allowed to go to the jury
under the circumstances surrounding him when they were made.
2d. That his honor violated art. 4, sec. 26, of the Constitution
in intimating his opinion to the jury on the effect of the facts
proved in certain particulars.

The law in reference to the competency of confessions is cor-
rectly stated in appellant's argument. They must be free and
voluntary. See case of *State* v. *Kirby,* 1 *Strob.,* 378. They
must not be made under the influence of hope or fear, and should
always be received with great caution. For, besides (as is said
by Mr. Greenleaf) the danger of mistake from the misapprehen-
sion of witnesses, the misuse of words, the failure of the party
to express his own meaning, and the infirmity of memory, the
situation of the prisoner, oppressed with his calamity, should not

be forgotten, nor the zeal of those seeking to detect the offender. Subject to these cautions, however, it is admitted that a deliberate confession affords the highest evidence of guilt. But before any confession is received it should be shown that it was voluntary—that it was free from any inducement, addressed either to his hope or his fears; and this is a preliminary question for the court, who admits or rejects it, as he may or may not find it to have been drawn from the prisoner by the application of improper motives. In other words, before a confession can go to the jury, the question of its competency must first be determined by the judge, and to that end the usual practice is to inquire of the witness whether the prisoner had been told that it would be better for him to confess, or worse for him if he did not confess, or whether language to that effect had been addressed to him. 1 *Greenl. Evid.*, § 219. But at last this matter is left very much to the discretion of the judge upon all the circumstances of the case, the rule of law in all cases demanding that he shall see to it that the confession, before it is held competent, shall have been made voluntarily without the appliance of either hope or fear.

It appears that confessions of the prisoner here were testified to by some five witnesses, to all of whom, except the witness Pennington, questions were propounded whether any inducement was held out, or any threat made, or anything said to induce him to believe that it would be better for him to confess, and worse if he did not, all of them answering positively in the negative. The conversation with Pennington was very short, it occurring while he had stopped with the train; and it is apparent that he held out no inducement of any kind to the prisoner. Under these circumstances we cannot see that the discretion of his honor was at fault in admitting the testimony. But even after the confessions were admitted, he left it to the jury in his charge to discard the evidence if they believed that the confessions were extorted from the prisoner. Although he had held them competent, because in his judgment they were voluntary, yet he charged that whether said confessions were voluntary, or were the result of fear, was a matter for their consideration, and theirs alone. This, perhaps, was not in accord-

ance with strict law, yet it was an error, if error it be, of which the prisoner could not complain, as it gave to the jury the right to disregard in favor of the prisoner, as incompetent, testimony which he had already pronounced competent.[1]

We do not see that his honor charged the jury upon the facts in violation of the inhibition of the constitution on that subject. He stated interrogatively what some of the witnesses had said, and he may have been mistaken in saying that Pennington had been sent for by the prisoner, and that he was not tied at that time. Admitting this, yet this was not such an error as would demand a new trial in the face of the other testimony in the case, as he neither expressed or indicated any opinion as to the truth of the confessions, or the testimony of the witnesses on that subject. On the contrary, he distinctly charged that the case was one of fact, and that the law made them the sole judge of such a question, and that the law did not permit him to assist them.

There, was no request made that the judge should charge any special proposition of law. Therefore the 9th exception is not before us.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

---

[1] This case was peculiar. Nothing passed between the defendant and the witnesses for the prosecution, to exclude the confessions. But if the defendant and his witness testified truly, then a most outrageous device was pursued by certain unknown parties to excite the prisoner's fears and to extort a confession of guilt. While, therefore, the judge did not err in admitting proof of these confessions, what was the proper course for him to pursue when the defendant's testimony was given? He must either have ruled out the confessions in evidence, or else instructed the jury that if they believed the confessions were not voluntary, but made under the influence of previous intimidation, to disregard them. He adopted the latter course. If the other course was proper, defendant's counsel should have moved to that effect.—REPORTER.